IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

*In re:*                                                    CASE NO. 8:19-BK-06187-CPM
                                                            CHAPTER 7

DOMINIK SZARGUT,

      Debtors.

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

## NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 801 N. Florida Avenue, Suite 555, Tampa, FL 33602 and serve a copy on the movant's attorney, Howard Law Group, 450 N. Park Road, Suite 800, Hollywood, FL 33021, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

      VRMTG ASSET TRUST ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor(s) having an address of 1011 58th Avenue North, St. Petersburg, FL 33703 (the "Property"). The facts and circumstances supporting this Motion are set forth in the Affidavit in Support of Motion for Relief from Automatic Stay attached hereto as Exhibit E (the "Affidavit"). In further support of this Motion, Movant respectfully states:

1.     A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor(s) on June 28, 2019.

2.     The Debtor(s) has/have executed and delivered or is/are otherwise obligated with respect to that

certain promissory note in the original principal amount of $135,000.00 (the "Note").  A true and correct copy of the Note is attached hereto as Exhibit A.  Movant is an entity entitled to enforce the Note.

3.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property.  A true and correct copy of the Mortgage is attached hereto as Exhibit B.

4.      All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a true and correct copy of which is attached hereto as Exhibit C.

5.      The legal description of the Property is

THE WEST 59 FEET OF LOT 2, AND THE EAST 1 FOOT OF LOT 3, BLOCK F, SALINAS EUCLID PARK, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 31, PAGE 37 OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.

6.      The Property has been surrendered by the Debtor.

7.      As of the petition date, the outstanding unpaid principal balance under the Note was 120,187.26, and the Debtor has defaulted under the terms of the Note and Mortgage by failing to make the payment due on May 1, 2016.

8.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $750.00 in legal fees and $181.00 in costs.

9.      The estimated market value of the Property is $140,789.00. The basis for such valuation is Pinellas County Property Appraiser.  A copy of the valuation is attached hereto as Exhibit D.

10.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $204,939.01.

11.     Secured Creditor requests that all communications sent by Secured Creditor in connection with

proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtor.

12.     Cause exists for relief from the automatic stay for the following reasons:

    (a)     Movant`s interest in the Property is not adequately protected.

    (b)     Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property.

13.     Pursuant to 11 U.S.C. § 362(e), Movant requests that in the event a hearing is necessary, said hearing be held within thirty (30) days.

    WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      That the 14-day stay of the relief order pursuant to FRBP 4001 be waived.

4.      For such other relief as the Court deems proper.

**I HEREBY CERTIFY** that on <u>August 20, 2019</u>, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to all CM/ECF participants:

Stephany P. Sanchez, Esq., PO Box 40008, St. Petersburg, FL 33743

Carolyn R. Chaney, Trustee, PO Box 530248, St. Petersburg, FL 33747

United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602

And a true and correct copy will be mailed to the non-CM/ECF participant:

Dominik Szargut, 1011 58th Avenue North, Saint Petersburg, FL 33703

Respectfully submitted,
MILLENNIUM PARTNERS

<u>/s/ Matthew Klein</u>
MATTHEW B KLEIN
FLORIDA BAR#: 73529
MILLENNIUM PARTNERS
21500 Biscayne Blvd., Ste. 600
Aventura, FL 33180
Telephone: 305-698-5839
Fax: 305-698-5840
Email: bankruptcy@millenniumpartners.net

# EXHIBIT A

# NOTE

| March 30, 2005 | ST PETERSBURG | Florida |
|---|---|---|
| [Date] | [City] | [State] |

1011 58th Ave N                    ,St Petersburg,FL 33703
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 135,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender is
Market Street Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     7.5000     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     1st     day of each month beginning on     May 1, 2005     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     April 1, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 22128, Tampa, FL  33622
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $943.94

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

0

FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(FL) (0005)          Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3      MW 05/00      Initials:

610  092382139  N  001  001

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.0000       % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

0

Form 3210 1/01
Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)     _____ (Seal)
Dominik Szargut                   -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                    -Borrower

*[Sign Original Only]*

0

-5N(FL) (0005)                    Page 3 of 3                    Form 3210 1/01

PAY TO THE ORDER OF Countrywide Document Custody Services
a division of Treasury Bank, N.A.
WITHOUT RECOURSE
MARKET STREET MORTGAGE CORPORATION

MARGARET ARNAO
ASSISTANT VICE PRESIDENT

MARKET STREET MORTGAGE CORPORATION
CORPORATE SEAL
FLORIDA

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.
WITHOUT RECOURSE
COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA
BY
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY
David A. Spector
Managing Director

Case 8:19-cr-00197-CEM  Doc 3  Filed 08/20/19  Page 9 of 34

Return To:
Market Street Mortgage Corporation
2650 McCormick Dr., Suite # 200
Clearwater, FL. 33759

# EXHIBIT B

This document was prepared by:
Dorothy Budd
Market Street Mortgage Corporation
2650 McCormick Dr., Suite # 200
Clearwater, FL. 33759

RETURN TO: Fidelity National Title
5810 W. Cypress Street, Suite E
Tampa, FL 33607
File: 509046

137.50
270.00
472.50
880.00

——————————[Space Above This Line For Recording Data]——————————

## MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated       March 30, 2005        ,
together with all Riders to this document.
**(B) "Borrower" is** Dominik Szargut, joined by his wife, Malgorzata Szargut

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender" is** Market Street Mortgage Corporation

0

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

VMP ®  -6A(FL) (0005).01
Page 1 of 16          MW 05/00.01    Initials: D.S  Malgor.

VMP MORTGAGE FORMS - (800)521-7291



Lender is a Corporation
organized and existing under the laws of the State of Florida
Lender's address is P.O. Box 22128, Tampa, FL. 33622-2128

**(E) "Note"** means the promissory note signed by Borrower and dated          March 30, 2005
The Note states that Borrower owes Lender One Hundred Thirty Five Thousand and
no/100                                                                          **Dollars**
(U.S. $ 135,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than          April 1, 2035
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider       ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

0

Initials: Q.S  H.S

-6A(FL) (0005).01          Page 2 of 16          Form 3010  1/01



**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County    [Type of Recording Jurisdiction]
of      Pinellas      [Name of Recording Jurisdiction]:

> The West 59 feet of Lot 2, and the East 1 foot of Lot 3,
> Block F, Salinas Euclid Park, according to the map or
> plat thereof as recorded in Plat Book 31, Page 37 of the
> Public Records of Pinellas County, Florida.

Parcel ID Number:                            which currently has the address of
1011 58th Ave N                                          [Street]
St Petersburg                 [City], Florida    33703    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005).01             Page 3 of 16          Initials: _D.Z H.S_        0
                                                                      Form 3010 1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

0



can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

0

-6A(FL) (0005).01          Page 5 of 16          Initials:           Form 3010  1/01



shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.





Initials: ___

0

-6A(FL) (0005).01                    Page 6 of 16                    Form 3010   1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

-6A(FL) (0005).01                     Page 8 of 16                     Initials:                      Form 3010 1/01

0

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(FL) (0005).01                Page 9 of 16          Initials: _____          Form 3010  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6A(FL) (0005).01     Page 10 of 16     Initials: _____     Form 3010 1/01



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

0

Initials: 

-6A(FL) (0005).01                    Page 11 of 16                    Form 3010  1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the



purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

0

-6A(FL) (0005).01                    Page 13 of 16                    Initials: _P.S_ _K.S_                    Form 3010   1/01

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Elizabeth Chadwell_

_Dominik Szargut_ _____ (Seal)
                                    -Borrower

1741 Thomas Dr, Clearwater, FL 33759
                                    (Address)

_Malgorzata Szargut_ _____ (Seal)
Malgorzata Szargut                  -Borrower

_____            (Address)

_____ (Seal)    _____ (Seal)
          -Borrower                   -Borrower

_____ (Address)          _____ (Address)

_____ (Seal)    _____ (Seal)
          -Borrower                   -Borrower

_____ (Address)          _____ (Address)

_____ (Seal)    _____ (Seal)
          -Borrower                   -Borrower

_____ (Address)          _____ (Address)

0

VMP®-6A(FL) (0005).01          Page 15 of 16          Form 3010  1/01



**STATE OF FLORIDA,**   Pinellas                              **County ss:**

The foregoing instrument was acknowledged before me this   March 30, 2005            by
Dominik Szargut and Malgorzata Szargut

who is personally known to me or who has produced  driver's license      as identification.

_____
Notary Public            Elizabeth Chadwell

ELIZABETH CHADWELL
MY COMMISSION # DD 252363
EXPIRES: December 27, 2007
Bonded Thru Notary Public Underwriters

Initials:                                                    0

-6A(FL) (0005).01            Page 16 of 16            Form 3010  1/01

I#: 2008338210 BK: 16455 PG: 2257, 12/22/2008 at 08:51 AM, RECORDING 1 PAGES
$10.00    KEN BURKE, CLERK OF COURT PINELLAS COUNTY, FL BY DEPUTY CLERK:
CLKDU08

Case 8:19-bk-06187-CPM Doc 6 Filed 06/20/19 Page 25 of 34

# COMPOSITE EXHIBIT C

Prepared by:     Nathalie F. Demesmin, Esquire

Record & Return to: Law Office of Marshall C. Watson
1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone:     (954) 453-0365
Facsimile:     (954) 771-6052

**RECORD AND
RETURN TO** ➡

### ASSIGNMENT OF MORTGAGE

*KNOW ALL MEN BY THESE PRESENTS:*

*THAT* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR MARKET STREET MORTGAGE CORPORATION residing or located at _____1595 SPRING HILL RD, #310, VIENNA, VA 22182_____herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto COUNTRYWIDE HOME LOANS, INC. residing or located at: c/o Countrywide Home Loans, Inc. 7105 CORPORATE DRIVE, PLANO, TX 75024 herein designated as the assignee, the mortgage executed by DOMINIK SZARGUT AND MAIGORZATA SZARGUT recorded April 6, 2005 in Pinellas County, Florida at Book 14226 and Page 2569 encumbering the property more particularly described as follows:

> THE WEST 59 FEET OF LOT 2, AND THE EAST 1 FOOT OF LOT 3, BLOCK F, SALINAS EUCLID PARK, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 31, PAGE 37 OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.

together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned, effective as of _____.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this ____6____ day of __November_____ _____, 2008__.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INCORPORATED AS NOMINEE FOR
MARKET STREET MORTGAGE CORPORATION

ATTEST: _____
PATRICIA ARANGO
ASSISTANT SECRETARY

Signed in the presence of:

WITNESS:_____
Print Name:_____

WITNESS:_____
Print Name:_____

STATE OF ___FLORIDA_____

COUNTY OF ___BROWARD_____

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the __6__ day of _____November_____, 2008___, within my jurisdiction, the within named who acknowledged to me that (s)he is _____PATRICIA ARANGO, ASSISTANT SECRETARY____ and who are personally known to me or has provided _____ as identification, that for and on behalf of Mortgage Electronic Registration Systems, Incorporated As Nominee For Market Street Mortgage Corporation and as this act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by Mortgage Electronic Registration Systems, Incorporated As Nominee For Market Street Mortgage Corporation to do so.

WITNESS my hand and official seal in the County and State last aforesaid this __6__ day of November _____,2008.

_____
NOTARY PUBLIC

*[Notary Seal: KELLY A. ANDERSON, NOTARY, My Comm. Expires April 23, 2010, No. DD505489, PUBLIC, STATE OF FLORIDA]*

08-52086

I#: 2010263232 BK: 17032 PG: 1879, 09/17/2010 at 10:54 AM, RECORDING 2 PAGES
$18.50 KEN BURKE, CLERK OF COURT PINELLAS COUNTY, FL DEPUTY CLERK:
CLKPR03

Case 8:19-bk-0518-CPM Doc 8 Filed 08/20/19 Page 26 of 34

Prepared by and return to:
Shapiro & Fishman, LLP
4630 Woodland Corporate Blvd.
Suite 100
Tampa, FL 33614
S&F No.: 10-191297

_____

This area above this line is for the use of recording official

## ASSIGNMENT OF MORTGAGE

**Countrywide Home Loans, Inc.**, ("Assignor"), C/O 400 Countrywide Way, Simi Valley,
California 93065-6298, has granted, bargained, sold, assigned, transferred and set over, and by
these presents does grant, bargain, sell, transfer and set over unto **BAC Home Loans
Servicing, L.P. f/k/a Countrywide Home Loans Servicing, L.P.**, ("Assignee"), C/O
400 Countrywide Way, Simi Valley, California 93065-6298, the following described
Mortgage(s) recorded in the Public Records of Pinellas County, State of Florida, together with
the note of obligation described in said Mortgage(s), and the money due and to become, due
thereon, with interest as therein provided, pursuant to section 701.02, Florida Statutes.

Date of Mortgage: March 30, 2005
Mortgage Recording Date: April 6, 2005
Clerk's File Number: 2005127942
Book Number: 14226
Page Number: 2569

Legal Description:

THE WEST 59 FEET OF LOT 2, AND THE EAST 1 FOOT OF LOT 3, BLOCK F, SALINAS
EUCLID PARK, ACCORDING TO THE MAP OR PLAT THEREOF, AS RECORDED IN
PLAT BOOK 31, PAGE 37, OF THE PUBLIC RECORDS OF PINELLAS COUNTY,
FLORIDA.

Original Mortgagors: Dominik Szargut, Joined By His Wife, Malgorzata Szargut

Assignor hereby acknowledges that this assignment is being executed as a recording formality
pursuant to requirements set forth under § 701.02, but that the intention of the parties herein be
such that delivery of the subject note and mortgage be established and evidenced by electronic or
physical delivery, of the note and mortgage and other related documents, and that such delivery
had occurred before default and before the filing to the lis pendens and that such date be the
delivery date as established by the expressed intention of the parties, herein.

    IN WITNESS WHEREOF, Assignor has caused these presents to be executed this
___8___ day of ___Sept___, 2010.

Countrywide Home Loans, Inc.

By: _____

Title: _____

Jeffrey Cowan - Vice President

(CORPORATE SEAL)

By: _____

Title: _____

Sandra Williams - Assist Vice President

STATE OF ~~FLORIDA~~ Texas

COUNTY OF ~~HILLSBOROUGH~~ Dallas  } SS.

I HEREBY CERTIFY, That on this day personally appeared before me, an officer duly authorized to administer oaths and take acknowledgements of the above referenced duly authorized signatories of _____ **Jeffery Cowan** _____ and _____ **Sandra Williams** _____, who are personally known to me and did take an oath and who are to me well known to be the persons described herein and who executed the foregoing Assignment of Mortgage and duly acknowledged before me and executed the same for the purposes therein expressed as the act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, said County and State, this _____ day of **SEP 8 2010** 2010

*NOTARY PUBLIC

Name of Notary: **Special Bell**

Commission NO. _____

My Commission Expires: **APR 2 3 2014**

S&F No.: 10-191297

(SEAL)

SPECIAL J. BELL
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-23-14

I#: 2015336872 BK: 18992 PG: 2299, 11/18/2015 at 03:18 PM, RECORDING 1 PAGES
$10.00 KEN BURKE, CLERK OF COURT AND COMPTROLLER PINELLAS COUNTY, FL BY
DEPUTY CLERK: CLK101737

Case 8:18-bk-06187-CPM Doc 8 Filed 08/20/19 Page 28 of 34

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

Pinellas, Florida
SELLER'S SERVICING # ███████████ SZARGUT"

Date of Assignment: November 4th, 2015
Assignor: BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING , LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT at
8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Executed By: DOMINIK SZARGUT, JOINED BY HIS WIFE, MALGORZATA SZARGUT To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MARKET STREET MORTGAGE
CORPORATION
Date of Mortgage: 03/30/2005 Recorded: 04/06/2005 in Book/Reel/Liber: 14226 Page/Folio: 2569 as Instrument
No.: 2005127942 In the County of Pinellas, State of Florida.

Property Address: 1011 58TH AVE N, ST PETERSBURG, FL 33703

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $135,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING , LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP, BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT
On November 4th, 2015

By: _Michelle Bowles_
MICHELLE BOWLES, Assistant
Secretary

STATE OF Texas
COUNTY OF Dallas

On November 4th, 2015, before me, NICOLE JOHNSON, a Notary Public in and for Dallas in the State of Texas,
personally appeared MICHELLE BOWLES, Assistant Secretary, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_signature_
NICOLE JOHNSON
Notary Expires: 04/08/2017

NICOLE JOHNSON
Notary Public, State of Texas
My Commission Expires
April 08, 2017

(This area for notarial seal)

Prepared By:
Bernardo Hernandez, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432

*MB2*MB2NATT*11/04/2015 08:37:07 AM* NATT01NATTA00000000000000248785* FLPINEL* 0615825809 FLSTATE_MORT_ASSIGN_ASSN **BHENATT*

CASE 8:19-BK-06287-CPM  DOC 8  Filed 09/26/19  Page 29 of 34

Record & Return to:
Hahn Management Services, LLC
160 Queens Avenue
West Babylon, NY 11704

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **VRMTG ASSET TRUST, WHOSE ADDRESS IS 650 FIFTH AVENUE, SUITE 1001, NEW YORK, NY 10019 (212)468-5580, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was made by **DOMINIK SZARGUT AND MALGORZATA SZARGUT** and recorded in Official Records of the Clerk of the Circuit Court of **PINELLAS** County, **Florida**, in **Book 14226, Page 2569 and Instrument # 2005127942,** upon the property situated in said State and County as more fully described in said Mortgage.

Modification: 08/18/2014 BK 18496 PG 2532 INST: 2014230874

**Dated on** _7/11_/2018 **(MM/DD/YYYY)**

**NATIONSTAR MORTGAGE LLC**

By: _(signature)_
**Jeanette Roikes**
**Vice President of Loan Documentation**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Witnesses:

_(signature)_

Marissa Lopez

_(signature)_

Katelynn Desrosiers

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on _7/11_/2018 (MM/DD/YYYY), by Jeanette Roikes as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_(signature)_
Alyssa Say
Notary Public - STATE OF FLORIDA
Commission expires: 10/02/2018

ALYSSA SAY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG167252
EXPIRES: 10/2/2018

# EXHIBT D

Interactive Map of this parcel    Sales Query    Back to Query Results    New Search    Tax Collector Home Page    Contact Us

## 36-30-16-78588-006-0020

**Compact Property Record Card**

**Updated** July 6, 2019     Email   Print     Radius Search     FEMA/WLM

| Ownership/Mailing Address Change Mailing Address | Site Address |
|---|---|
| SZARGUT, DOMINIK<br>1011 58TH AVE N<br>ST PETERSBURG FL 33703-1121 | 1011 58TH AVE N<br>ST PETERSBURG |

Property Use: 0110 (Single Family Home)     Total Living: SF: 896     Total Gross SF: 938     Total Living Units:1

[click here to hide] **Legal Description**
SALINAS EUCLID PARK SUB BLK F, W 59FT OF LOT 2 & E 1FT OF LOT 3

| Tax Estimator   File for Homestead Exemption | | | 2019 Parcel Use | |
|---|---|---|---|---|
| **Exemption** | **2019** | **2020** | *Assuming no ownership changes before Jan. 1 | |
| Homestead: | Yes | Yes | Homestead Use Percentage: 100.00% | |
| Government: | No | No | Non-Homestead Use Percentage: 0.00% | |
| Institutional: | No | No | Classified Agricultural: No | |
| Historic: | No | No | | |

### Parcel Information   Latest Notice of Proposed Property Taxes (TRIM Notice)

| Most Recent Recording | Sales Comparison | Census Tract | Evacuation Zone<br>(NOT the same as a FEMA Flood Zone) | Flood Zone<br>(NOT the same as your evacuation zone) | Plat Book/Page |
|---|---|---|---|---|---|
| 14226/2567 | $163,900 Sales Query | 121030243013 | B | Compare Preliminary to Current FEMA Maps | 31/37 |

### 2019 Preliminary Value Information

| Year | Just/Market Value | Assessed Value / SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|
| 2019 | $140,789 | $64,106 | $25,000 | $39,106 | $25,000 |

[click here to hide] **Value History as Certified** (yellow indicates correction on file)

| Year | Homestead Exemption | Just/Market Value | Assessed Value | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|---|
| 2018 | Yes | $120,147 | $62,911 | $25,000 | $37,911 | $25,000 |
| 2017 | Yes | $106,883 | $61,617 | $25,000 | $36,617 | $25,000 |
| 2016 | Yes | $89,463 | $60,350 | $25,000 | $35,350 | $25,000 |
| 2015 | Yes | $74,938 | $59,930 | $25,000 | $34,930 | $25,000 |
| 2014 | Yes | $60,763 | $59,454 | $25,000 | $34,454 | $25,000 |
| 2013 | Yes | $58,575 | $58,575 | $25,000 | $33,575 | $25,000 |
| 2012 | Yes | $62,082 | $62,082 | $25,000 | $37,082 | $25,000 |
| 2011 | Yes | $64,571 | $64,571 | $25,000 | $39,571 | $25,000 |
| 2010 | Yes | $66,939 | $66,939 | $25,000 | $41,939 | $25,000 |
| 2009 | Yes | $82,181 | $82,181 | $32,181 | $57,181 | $32,181 |
| 2008 | Yes | $110,200 | $110,200 | $60,200 | $85,200 | $60,200 |
| 2007 | Yes | $115,300 | $115,300 | $90,300 | N/A | $90,300 |
| 2006 | Yes | $112,700 | $112,700 | $87,700 | N/A | $87,700 |
| 2005 | No | $87,900 | $87,900 | $87,900 | N/A | $87,900 |
| 2004 | No | $75,000 | $75,000 | $75,000 | N/A | $75,000 |
| 2003 | No | $63,800 | $63,800 | $63,800 | N/A | $63,800 |
| 2002 | No | $54,700 | $54,700 | $54,700 | N/A | $54,700 |
| 2001 | No | $52,400 | $52,400 | $52,400 | N/A | $52,400 |
| 2000 | Yes | $48,000 | $48,000 | $23,000 | N/A | $23,000 |
| 1999 | Yes | $47,300 | $47,300 | $22,300 | N/A | $22,300 |
| 1998 | No | $43,100 | $43,100 | $43,100 | N/A | $43,100 |
| 1997 | No | $41,600 | $41,600 | $41,600 | N/A | $41,600 |
| 1996 | No | $39,200 | $39,200 | $39,200 | N/A | $39,200 |

### 2018 Tax Information

2018 Tax Bill     Tax District: SP

2018 Final Millage Rate     21.7154

Do not rely on current taxes as an estimate following a change in ownership. A significant change in taxable value may occur after a transfer due to a loss of exemptions, reset of the Save Our Homes or 10% Cap, and/or market conditions. Please use our new Tax Estimator to estimate taxes under new ownership.

### Ranked Sales (What are Ranked Sales?)   See all transactions

| Sale Date | Book/Page | Price | Q/U | V/I |
|---|---|---|---|---|
| 06 Apr 2005 | 14226 / 2567 | $135,000 | Q | I |
| 07 Dec 2000 | 11147 / 0639 | $63,000 | Q | I |
| 06 Mar 1998 | 10015 / 0801 | $52,500 | Q | I |
| 31 Aug 1993 | 08387 / 1584 | $28,200 | U | I |
| 24 Apr 1991 | 07551 / 0631 | $38,400 | Q | I |
| 14 Mar 1990 | 07223 / 0551 | $35,400 | Q | I |

### 2019 Land Information

Seawall: No     Frontage: None     View:

| Land Use | Land Size | Unit Value | Units | Total Adjustments | Adjusted Value | Method |
|---|---|---|---|---|---|---|
| Single Family (01) | 60x133 | 1590.00 | 60.0000 | 0.9797 | $93,463 | FF |

[click here to hide] **2019 Building 1 Structural Elements** Back to Top
Site Address: 1011 58TH AVE N

Building Type: **Single Family**

Quality: **Average**

Foundation: **Continuous Footing**

Floor System: **Slab On Grade**

Exterior Wall: **Cb Stucco/Cb Reclad**

Roof Frame: **Flat Shed**

Roof Cover: **Blt Tar & Gravel Alt**

Stories: **1**

Living units: **1**

Floor Finish: **Carpet/Hardtile/Hardwood**

Interior Finish: **Drywall/Plaster**

Fixtures: **3**

Year Built: **1953**

Effective Age: **31**

Heating: **Central Duct**

Cooling: **Cooling (Central)**

## Building 1 Sub Area Information

| Description | Living Area SF | | Gross Area SF |
|---|---|---|---|
| UTU | 0 | | 42 |
| Base | 896 | | 896 |
| Total Living SF: **896** | | | Total Gross SF: **938** |

**[click here to hide] 2019 Extra Features**

| Description | Value/Unit | Units | Total Value as New | Depreciated Value | Year |
|---|---|---|---|---|---|
| Patio/Deck | $0.00 | 1.00 | $0.00 | $0.00 | 1980 |

**[click here to hide] Permit Data**

Permit information is received from the County and Cities. This data may be incomplete and may exclude permits that do not result in field reviews (for example for water heater replacement permits). We are required to list all improvements, which may include unpermitted construction. Any questions regarding permits, or the status of non-permitted improvements, should be directed to the permitting jurisdiction in which the structure is located.

| Permit Number | Description | Issue Date | Estimated Value |
|---|---|---|---|
| 16-11001591 | ROOF | 30 Nov 2016 | $3,990 |

Utility Unfinished

Compact Property Record Card

Open plot in New Window



Interactive Map of this parcel      Map Legend                    Sales Query        Back to Query Results          New Search          Tax Collector Home Page              Contact Us

2 of 2

7/8/2019, 2:02 PM

EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

*In re:*                                                            CASE NO. 8:19-BK-06187-CPM
                                                                              CHAPTER 7
DOMINIK SZARGUT,

     Debtor.

_____/

### AFFIDAVIT AS TO INDEBTEDNESS

STATE OF _____Florida_____

COUNTY OF _____Duval_____

     **BEFORE ME** an officer authorized to take oaths this day personally appeared Keshia Stieber    **Team Lead - Bankruptcy**    of Selene Finance, LP ("Servicer"), who, being first duly sworn, deposes and says:

     1.     I am authorized to sign this affidavit on behalf of Movant, VRMTG Asset Trust ("Movant").

     2.     I am a representative of the Servicer, which is Movant's servicing agent and Attorney in Fact for the subject loan ("the Loan").

     3.     Servicer maintains records for the Loan. As part of my job responsibilities for the Movant, I am familiar with the type of records maintained by the Servicer in connection with the Loan.

     4.     The information in this affidavit is taken from the Servicer's business records. I have personal knowledge of the Servicer's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons

with personal knowledge; (b) the records are kept in the course of the Servicer's regularly conducted business activities; and (c) it is the regular practice of the Servicer to make such records.

5.    The Servicer services the Loan encumbering the Debtor(s); property.

6.    The information contained in the Motion for Relief ("Motion") is derived from the Servicer's business records and all the Loan documents attached to the Motion as exhibits are true and accurate copies of the original documents.

7.    The business records, which I have reviewed, show that there has been a default under the Loan, as the payment contractually due for May 1, 2016 and all subsequent payments have not been made.

8.    The default has not been cured, and there are presently due and owing to the Servicer the following sums of money.

| NAME | AMOUNT |
|---|---|
| Unpaid Principal Balance | $120,187.26 |
| Interest | $15,285.06 |
| Escrow | $10,357.52 |
| Deferred Amounts | $52,871.77 |
| Fees Assessed | $6,237.40 |
| Grand Total | $204,939.01 |

The amount due and owing to Servicer is subject to change.

9.    I certify that the foregoing is true and correct based upon my review of business records.

10.     Servicer has retained Howard Law Group to prosecute the Motion and is obligated
to pay a reasonable fee and reimburse costs incurred in connection with the firm's services.

**FURTHER AFFIANT SAYETH NAUGHT**.

_____
Affiant                          Keshia Stieber

**SWORN TO** and subscribed before me this 14th day of August 2019, by
_Keshia Stieber_ (Name), as an
_Bankruptcy Team Lead_ (Title) of the Servicer. He/she [ ] is personally known to me
or [ ] produced _____N/A_____ as identification.


_____
NOTARY PUBLIC   Genevieve A. Jacobs
My Commission expires: 3-13-2022
(Notary Seal)

GENEVIEVE A. JACOBS
Commission # GG 195487
Expires March 13, 2022
Bonded Thru Troy Fain Insurance 800-385-7019